# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHRISTINA L. SPRADLEY,     )
                       )
         Plaintiff,      )
                       )
     v.                 )      1:20CV337
                       )
ANDREW M. SAUL,         )
Commissioner of Social     )
Security,              )
                       )
         Defendant.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Christina L. Spradley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of September 29, 2012. (Tr. 230-38.) Upon denial of that application initially (Tr. 75-91, 111-14) and on reconsideration (Tr. 92-110, 120-27), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 129-32).[1]   Plaintiff, her
attorney, and a vocational expert ("VE") attended the hearing.
(Tr. 31-74.)   The ALJ subsequently ruled that Plaintiff did not
qualify as disabled under the Act.   (Tr. 12-24.)   The Appeals
Council thereafter denied Plaintiff's request for review (Tr. 1-6,
227-29, 416-17), thereby making the ALJ's ruling the Commissioner's
final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following
findings:

> 1.   [Plaintiff] last met the insured status requirements
> of the . . . Act on December 31, 2017.
>
> 2.   [Plaintiff] did not engage in substantial gainful
> activity during the period from . . . December 28, 2015,
> the amended alleged onset date, through her date last
> insured of December 31, 2017.
>
> . . .
>
> 3.   Through the date last insured, [Plaintiff] had the
> following severe impairments: diabetes with neuropathy,
> obesity, cervical and lumbar degenerative disc disease,
> asthma, irritable bowel disease/gastroparesis (IBD/G).
>
> . . .
>
> 4.   Through the date last insured, [Plaintiff] did not
> have an impairment or combination of impairments that met
> or medically equaled the severity of one of the listed
> impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .

---

[1] During Plaintiff's administrative hearing, she amended her alleged onset
date from September 29, 2012, to December 28, 2015.  (See Tr. 72, 267.)

5.  . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work . . . except: no ropes/ladders/scaffolds; frequent balancing; occasional stoop, kneel, crouch; no crawl; frequent reach all directions except overhead, which is occasional; sit/stand hourly while remaining on task; ready access (near proximity) to restroom[;] no concentrated pulmonary irritants/atmospheric conditions or hazards; with restroom breaks hourly of five minutes duration.

. . .

6.  Through the date last insured, [Plaintiff] was capable of performing past relevant work as a Payroll Clerk (sedentary/semiskilled/SVP4, but performed at SVP 5), [Dictionary of Occupational Titles ("DOT")] code 215.382-014.  This work did not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity.

. . .

7.  [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from September 29, 2012, the alleged onset date, through December 31, 2017, the date last insured.

(Tr. 17-24 (bold font and internal parenthetical citations omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v.

---

[2] In the ALJ's finding of fact number seven, he mistakenly described the relevant period as running from September 29, 2012, to December 31, 2017 (see Tr. 24); however, as the ALJ had earlier acknowledged (see Tr. 15, 17), Plaintiff amended her onset date from September 29, 2012, to December 28, 2015 (see Tr. 72, 267).  That error by the ALJ remains harmless under the circumstances of this case, as a finding that Plaintiff did not qualify as disabled from September 29, 2012, to December 31, 2017, necessarily encompasses a finding that Plaintiff did not so qualify from December 28, 2015, to December 31, 2017.

3

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

4

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by finding that Plaintiff's anxiety and depression did not constitute severe impairments and by failing to include any limitations resulting from those impairments in the RFC" (Docket Entry 12 at 4 (bold font and single-spacing omitted));

2) "[t]he ALJ erred by failing to perform a proper function by function assessment of Plaintiff's ability to handle and finger when assessing the RFC" (<u>id.</u> at 10 (bold font and single-spacing omitted)); and

3) "[t]he ALJ erred by failing to account for Plaintiff's need to lie down and take breaks in the RFC due to her gastroparesis,

_____

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

fatigue and nausea resulting from her [diabetes mellitus]" (id. at 15 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 6-16.)

## 1. **Severity of Mental Impairments**

Plaintiff's first assignment of error maintains that "[t]he ALJ erred by finding that Plaintiff's anxiety and depression did not constitute severe impairments and by failing to include any limitations resulting from those impairments in the RFC." (Docket Entry 12 at 4 (bold font and single-spacing omitted).) In that regard, Plaintiff observes that "the severity standard at [s]tep [t]wo [of the SEP] is a low threshold" (id. (citing Albright, 174 F.3d at 474, n.1)), and emphasizes her testimony that she "los[es] her train of thought" (id. (citing Tr. 41)), "takes medication for depression" (id. (citing Tr. 66-67)), "stays in her room [sometimes] and does not want to be around people" (id. (citing Tr. 67)), and "did not think she could maintain attention for long enough to do the kind of work that was involved with her payroll job anymore" (id. (citing Tr. 68)). Plaintiff additionally faults the ALJ for "find[ing] that [Plaintiff] experienced 'mild limitation' in the domain of [concentration, persistence, or pace ('CPP')]" (id. at 10 (quoting Tr. 19)), but "includ[ing] no limitations corresponding to th[at] limitation[] in the RFC" (id. (citing Tr. 19-20, and Reinhardt v. Colvin, No. 3:14CV488, 2015 WL

9

1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) (in turn citing Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)))).

Plaintiff further points out that, "in finding that [Plaintiff]'s anxiety and depression were not severe, the ALJ rejected ALL of the medical opinions on record which found otherwise including [consultative psychological examiner] Dr. Gregory [A.] Villarosa's opinion – the only psychological expert to perform a comprehensive evaluation of [Plaintiff,] rendering his findings and opinion of central importance when assessing [Plaintiff]'s mental limitations in the RFC." (Id. at 5 (referencing Tr. 22, and citing Tr. 619-21).) According to Plaintiff, "courts have repeatedly observed that 'ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.'" (Id. at 9 (quoting Moon v. Colvin, 763 F.3d 718, 722 (7th Cir. 2014), and citing McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002), Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996), and Jackson v. Astrue, 2010 WL 500449 at *7 (D.S.C. Feb. 5, 2010) (unpublished)).) Plaintiff maintains that "the ALJ's error in failing to give adequate weight to any psychological expert's opinion on record was very harmful as the VE testified that if [Plaintiff] were limited to the performance of [simple, routine, and repetitive tasks ('SRRTs')] as the [state agency] psychologists found, then she would be unable to perform her [past relevant work ('PRW')] as a

10

payroll clerk" (id. (citing Tr. 71)), and notes that Plaintiff's "ability to perform th[e payroll clerk] job was the basis of the ALJ's denial of [] benefits" (id. (citing Tr. 23)). Plaintiff's contentions miss the mark.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *11 (Oct. 25, 2017) ("SSR 16-3p"). An impairment fails to qualify as "severe" if it constitutes "only a slight abnormality . . . which would have no more than a minimal effect on an individual's ability . . . to perform basic work activities." Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that Are Not Severe, 1985 WL 56856, at *3 (1985) ("SSR 85-28"). As regards mental impairments, the applicable regulation further identifies "basic [mental] work activities" as including:

- Understanding, carrying out, and remembering simple instructions;

- Use of judgment;

- Responding appropriately to supervision, co-workers and usual work situations; and

11

- Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b). Plaintiff bears the burden of proving
severity at step two. <u>Hunter</u>, 993 F.2d at 35.

The ALJ found as follows with regard to the severity of
Plaintiff's mental impairments:

> [Plaintiff]'s medically determinable mental impairments
> of depression and anxiety, considered singly and in
> combination, did not cause more than minimal limitation
> in her ability to perform basic mental work activities
> and were therefore non-severe.
>
> In making this finding, the [ALJ] ha[s] considered the
> four broad areas of mental functioning set out in the
> disability regulations for evaluating mental disorders
> and in the Listing of Impairments. These four areas of
> mental functioning are known as the "paragraph B"
> criteria.
>
> The first functional area is understanding, remembering,
> or applying information. In this area, [Plaintiff] had
> a <u>mild</u> limitation. [Plaintiff] testified that her IBD/G
> is the number one impairment that affects her ability to
> work. However, [Plaintiff] reported that she needs
> reminders to take medicine. Although her consultative
> examination with [Dr.] Villarosa[ ] revealed fleeting eye
> contact, some tearfulness, dysphoric mood, and minor
> anhedonia, it also showed unremarkable psychomotor
> activity, fair social skills, coherent and logical
> speech, no psychotic symptoms, normal thought content,
> full orientation, fair memory, and adequate
> concentration. Although at times, mental status
> examinations showed moderate distress, they
> overwhelmingly showed alertness, full orientation, no
> focal neurological deficits, cooperative attitude, normal
> mood/affect, no acute distress, normal judgment, normal
> insight, and no evidence of depression, anxiety, or
> agitation. Therefore, [Plaintiff] had a mild limitation
> in understanding, remembering, or applying information.
>
> The next functional area is interacting with others. In
> this area, [Plaintiff] had a <u>mild</u> limitation.
> [Plaintiff] testified that her IBD/G is the number one

12

impairment that affects her ability to work.  In
addition, she reported that she spends time with others
on the phone, watches her son coach and play in his band,
has no problem getting along with others, and gets along
well with authority, never having any issues.  Although
her consultative examination with Dr. Villarosa[]
revealed fleeting eye contact, some tearfulness,
dysphoric mood, and minor anhedonia, it also showed
unremarkable psychomotor activity, fair social skills,
coherent and logical speech, no psychotic symptoms,
normal thought content, full orientation, fair memory,
and adequate concentration.  Although at times, mental
status examinations showed moderate distress, they
overwhelmingly showed alertness, full orientation, no
focal neurological deficits, cooperative attitude, normal
mood/affect, no acute distress, normal judgment, normal
insight, and no evidence of depression, anxiety, or
agitation.  Therefore, [Plaintiff] had a mild limitation
in interacting with others.

The third functional area is [CPP].  In this area,
[Plaintiff] had a <u>mild</u> limitation.  [Plaintiff] testified
that her IBD/G is the number one impairment that affects
her ability to work.  However, she reported that she can
pay attention for no more than 30 minutes, does not
finish what she starts, does not follow instructions
well, does not handle stress well, and dos [sic] not
handle changes in routine well.  Although her
consultative examination with Dr. Villarosa[] revealed
fleeting eye contact, some tearfulness, dysphoric mood,
and minor anhedonia, it also showed unremarkable
psychomotor activity, fair social skills, coherent and
logical speech, no psychotic symptoms, normal thought
content, full orientation, fair memory, and adequate
concentration.  Although at times, mental status
examinations showed moderate distress, they
overwhelmingly showed alertness, full orientation, no
focal neurological deficits, cooperative attitude, normal
mood/affect, no acute distress, normal judgment, normal
insight, and no evidence of depression, anxiety, or
agitation.  Therefore, [Plaintiff] had a mild limitation
in concentrating, persisting, or maintaining pace.

The fourth functional area is adapting or managing
oneself.  In this area, [Plaintiff] had a <u>mild</u>
limitation.  [Plaintiff] testified that her IBD/G is the
number one impairment that affects her ability to work.

13

> [Plaintiff] testified (and reported) that her <u>physical</u> <u>pain</u> restricts her from completing daily activities such as cooking, doing housework, and, shopping. However, she reported that she prepares some of her own meals, does some housework, drives, shops, and manages her money. Although her consultative examination with Dr. Villarosa revealed fleeting eye contact, some tearfulness, dysphoric mood, and minor anhedonia, it also showed unremarkable psychomotor activity, fair social skills, coherent and logical speech, no psychotic symptoms, normal thought content, full orientation, fair memory, and adequate concentration. Although at times, mental status examinations showed moderate distress, they overwhelmingly showed alertness, full orientation, no focal neurological deficits, cooperative attitude, normal mood/affect, no acute distress, normal judgment, normal insight, and no evidence of depression, anxiety, or agitation. Therefore, [Plaintiff] had a mild limitation in adapting or managing oneself.
>
> Because [Plaintiff]'s medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they were non-severe.

(Tr. 18-19 (internal citations omitted) (emphasis added).)

The ALJ's above-quoted analysis cites to substantial evidence to support his step two severity finding. The ALJ's evaluation included consideration of 1) Plaintiff's statements about her mental symptoms, 2) Plaintiff's ability to engage in daily activities, 3) objective medical evidence, and 4) opinion evidence. (See id.) In particular, the ALJ's review of the objective medical evidence included citations to repeated instances of entirely normal mental status examinations ranging in time from January 16,

14

2016, to March 6, 2018. (<u>See</u> <u>id.</u> (citing Tr. 644, 659-716, 736-37, 745, 748, 879, 911).)[7]

Significantly, Plaintiff does not challenge any of the evidence on which the ALJ based his severity finding. Rather, Plaintiff points to her own testimony regarding mental symptoms (<u>see</u> Docket Entry 12 at 4 (citing Tr. 41, 66-68)) and her subjective complaints of psychiatric symptoms to medical providers (<u>see</u> <u>id.</u> at 7-8 (citing Tr. 666, 669, 671, 736, 744, 747, 884)) to show that her depression and anxiety qualified as severe. However, Plaintiff's approach misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's non-severity finding, and not whether other record evidence weighed against that finding, <u>see</u> <u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."). As

---

[7] The ALJ's citation to Exhibit "16F/16" (Tr. 18, 19) likely constitutes a typographical error. Page <u>16</u> of Exhibit 16F reflects the results of a CT scan of Plaintiff's abdomen and pelvis and does not contain any mental status examination findings. (<u>See</u> Tr. 911.) Page <u>61</u> of Exhibit 16F, by contrast, reflects normal findings on mental status examination at an emergency room visit in January 2016. (<u>See</u> Tr. 956.) Thus, the ALJ likely transposed the "6" and the "1" in pin citing the page number of Exhibit 16F.

15

stated above, the ALJ's step two discussion supplied substantial evidence to support his non-severity finding.

Plaintiff next contends that the ALJ erred by "find[ing] that [Plaintiff] experienced 'mild limitation' in the domain of CPP" (Docket Entry 12 at 10 (quoting Tr. 19)), but "includ[ing] no limitations corresponding to th[at] limitation[] in the RFC" (id. (citing Tr. 19-20, and Reinhardt, 2015 WL 1756480, at *3 (in turn citing Mascio, 780 F.3d at 638))). As an initial matter, it remains unclear whether Mascio applies to mild as opposed to moderate limitations in CPP. The United States Court of Appeals for the Fourth Circuit, in finding that an ALJ failed to account for the claimant's moderate CPP limitation in the RFC, held in Mascio that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. Importantly, as a neighboring district court has explained, even a moderate limitation in CPP does not compel a resulting restriction in the RFC under Mascio:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Mascio,

780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Moreover, although the court in Reinhardt remanded for an ALJ's failure to adequately account for mild limitation in CPP, see Reinhardt, 2015 WL 1756480, at *3; see also McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *2-6 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C Sept. 29, 2016) (Schroeder, J.); Ashcraft v. Colvin, No. 3:13CV417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished), many cases exist to the contrary, see Martin v. Saul, No. 9:18CV3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (unpublished) (noting that "most district court decisions [in the Fourth Circuit] have found to the contrary"), recommendation adopted, 2020 WL 1329395 (D.S.C. Mar. 23, 2020) (unpublished); Morrison v. Berryhill, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (finding that the plaintiff's "heavy reliance on Mascio . . . [wa]s misplaced" and noting that, since "about a month after the Mascio decision," many cases in the Western District of North Carolina "have held that the requirements of Mascio do not necessarily apply where a plaintiff is found to have mild limitations in CPP"), recommendation adopted, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); Thorp v. Berryhill, 3:16CV70, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018)

17

(unpublished) (holding that the "case differ[ed] <u>markedly</u> from <u>Mascio</u>" because the plaintiff "had <u>mild</u> difficulties maintaining [CPP]" (emphasis added)); <u>Williamson v. Berryhill</u>, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on <u>Mascio</u> [] inapt" where ALJ found "only *mild* limitations in . . . CPP"); <u>Thompson v. Colvin</u>, 1:15CV234, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The Court does not read <u>Mascio</u> to impose a duty on ALJs to automatically or necessarily account for <u>mild</u> limitations in the RFC." (emphasis added)). Thus, the weight of post-<u>Mascio</u> authority among the district courts in the Fourth Circuit does not favor extending <u>Mascio</u> to <u>mild</u> limitation in CPP.

Moreover, even assuming, against the weight of persuasive authority, that <u>Mascio</u> applies to <u>mild</u> limitation in CPP (i.e., the lowest of four levels above "none"), Plaintiff has not shown error by the ALJ here. As quoted above, the ALJ's step two analysis of CPP sufficiently explains why the ALJ did not include mental restrictions in the RFC to account for Plaintiff's mild CPP limitation. The ALJ noted that, despite Plaintiff's statements that she could "pay attention for no more than 30 minutes, d[id] not finish what she start[ed], [and] d[id] not follow instructions well" (Tr. 19 (citing Tr. 294-301)), Dr. Villarosa documented "adequate concentration" (<u>id.</u> (citing Tr. 619-23)), and mental status examinations "overwhelmingly showed alertness, full

18

orientation, no focal neurological deficits, cooperative attitude, normal mood/affect, no acute distress, normal judgment, normal insight, and no evidence of depression, anxiety, or agitation" (id. (citing Tr. 644, 659-716, 736-37, 745, 748, 879, 911)).

Plaintiff also faults the ALJ for determining the severity of Plaintiff's mental impairments and formulating the RFC without adopting any medical opinions from the state agency psychological consultants or Dr. Villarosa. (Docket Entry 12 at 5 (citing Moon, McGoffin, 288 F.3d at 1252, Rohan, 98 F.3d at 971, and Jackson, 2010 WL 500449 at *7).) However, the cases relied on by Plaintiff do not aid her cause, because none of them hold that an ALJ must rely on opinion evidence to make step two severity findings and/or to formulate the RFC; rather, in each case, the court faulted the ALJ for relying solely on his or her lay interpretation of particular evidence. See Moon, 763 F.3d at 722 (remanding where ALJ relied on the claimant's unremarkable MRI to deem her migraines insignificant, but "[n]o doctor ever suggested that the MRI evidence meant anything about [the claimant]'s migraines" because "[d]octors use MRIs to rule out other possible causes of headache — such as a tumor — meaning that an unremarkable MRI is completely consistent with a migraine diagnosis"); McGoffin, 288 F.3d at 1252 (finding reversible error where ALJ accorded no weight to treating physician's assessment due to ALJ's unfounded doubt that physician reviewed and approved assessment despite fact that physician's

19

signature appeared on assessment); Rohan, 98 F.3d at 970-71
(holding that ALJ "improperly substituted his judgment for that of
[the treating psychiatrist]" where ALJ believed that the claimant's
ability to maintain machine repair business conflicted with
treating psychiatrist's opinions regarding the claimant's mental
limitations "[w]ithout expressly relying on any medical evidence or
authority" (emphasis added)); Jackson, 2010 WL 500449 at *7
(deeming ALJ "simply not qualified to interpret raw medical data in
functional terms" where ALJ rejected psychological consultant's
reported IQ scores derived from Wechsler Adult Intelligence Scale
III (WAIS-III) which satisfied requirements of intellectual
disability listing because ALJ "believe[d]" scores lacked
consistency with the claimant's daily activities (emphasis added)).
Here, in contrast to those cases and, as discussed above, the ALJ
relied on 1) Plaintiff's statements about her mental symptoms, 2)
Plaintiff's ability to engage in daily activities, 3) objective
medical evidence, and 4) opinion evidence, in reaching his severity
finding. (See Tr. 18-19.)

    Furthermore, RFC constitutes an administrative finding, not a
medical assessment, and the responsibility for assessing a
plaintiff's RFC rests solely with the ALJ. See 20 C.F.R.
§ 404.1546(c). As a result, "[t]he ALJ was not required to obtain
an expert medical opinion as to [Plaintiff]'s RFC." Felton-Miller
v. Astrue, 459 F. App'x 226, 231 (4th Cir. 2011); see also Wykle v.

<u>Saul</u>, No. 1:19CV155, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020) (unpublished) (holding, in case where state agency medical consultants found insufficient medical evidence before [Plaintiff]'s DLI to render opinion on [Plaintiff]'s RFC, that "there is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion" (citing <u>Felton-Miller</u>, 459 F. App'x at 230-31)); <u>Moore v. Colvin</u>, No. 15CV425, 2016 WL 1714117 (D.S.C. Apr. 29, 2016) (unpublished) (holding that "the ALJ is not required to rely on medical opinions to formulate an RFC assessment, as the 'ALJ is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision'" (quoting <u>Chandler v. Commissioner of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011))).[8]

_____

[8] Plaintiff contends that "the ALJ's argument that [Dr. Villarosa's] opinion is 'inconsistent with the mental medical evidence of record' rings hollow," because "the record does not contain any other formal mental health treatment with a psychological expert." (Docket Entry 12 at 6-7 (quoting Tr. 22).) However, that argument glosses over the ALJ's specific citation to mental status examinations "overwhelmingly show[ing] alertness, full orientation, no focal neurological deficits, cooperative attitude, normal mood/affect, no acute distress, normal judgment, normal insight, and no evidence of depression, anxiety, or agitation" ranging in time from January 16, 2016, to March 6, 2018. (<u>See</u> Tr. 18-19 (citing Tr. 644, 659-716, 736-37, 745, 748, 879, 911).) Indeed, Plaintiff's lack of "formal mental health treatment with a psychological expert" further supports the ALJ's non-severity finding (and thus also undermines the strength of Dr. Villarosa's opinions regarding the severity of Plaintiff's mental impairments). Plaintiff also challenges as "circular" the ALJ's assignment of little weight to the state agency psychological consultants' opinions limiting Plaintiff to SRRTs "'as inconsistent with the medical evidence of record that shows [Plaintiff] is not limited to SRRTs.'" (Docket Entry 12 at 8-9 (quoting Tr. 22).) Although, standing alone, that reasoning would not suffice, when considered in the context of the ALJ's detailed and thorough review of the mental evidence of record at step two, the Court can ascertain the basis for the ALJ's rejection of the consultants' opinions. Moreover, although not mentioned by the ALJ, the state agency psychological consultants found insufficient evidence to assess the severity of Plaintiff's mental impairments from September 29, 2012, the original alleged onset date, through June 5, 2016 (<u>see</u> Tr. 82, 100) and thus

21

In sum, the ALJ supported his step two severity finding with substantial evidence and, as a result, the Court should not grant relief on Plaintiff's first assignment of error.

## 2. Handling and Fingering Limitations

In Plaintiff's second issue on review, she faults the ALJ for "failing to perform a proper function by function assessment of Plaintiff's ability to handle and finger when assessing the RFC." (Docket Entry 12 at 10 (bold font and single-spacing omitted).) According to Plaintiff, "the ALJ found that [Plaintiff] was limited to 'frequent reach[ing] in all directions except overhead, which is occasional' (id. at 11 (quoting Tr. 20)), but the ALJ did not include any limitations on handling and fingering despite [Plaintiff]'s testimony regarding her difficulty with grabbing and holding onto objects due to right hand pain, weakness and numbness" (id. (citing Tr. 47, 49, 52); see also id. at 12-14 (describing medical evidence Plaintiff believes supports handling and fingering limitations (citing Tr. 299, 512, 515, 518-22, 525, 526, 528, 529, 535, 547, 552, 553, 613, 710, 736, 744, 872, 954, 956)).)

offered opinions covering just the brief periods from June 6, 2016, to July 28, 2016 (initial level) (see Tr. 83), and from June 6, 2016, to November 3, 2016 (reconsideration level) (see Tr. 101). In addition, the consultants offered their opinions regarding the severity of Plaintiff's mental impairments using the pre-2017 version of the "paragraph B criteria" of Listings 12.04 and 12.06. (See Tr. 83, 101.) Effective on January 17, 2017, the Commissioner made substantial revisions to the criteria for evaluating mental disorders in the Listing of Impairments, see Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66137 (Sept. 26, 2016), and the ALJ's step two severity finding utilized the revised "paragraph B criteria" of those Listings (see Tr. 18-19).

Plaintiff deems the lack of handling and fingering limitations "problematic" (id. at 11), as she asserts that "the ALJ appears to have credited [Plaintiff]'s testimony with respect to reaching, but did not credit her testimony regarding handling and fingering[, b]ut nowhere did he explain which of her statements to accept and which to discredit" (id. (quoting Mascio, 780 F.3d at 639-40 (finding that "ALJ's lack of explanation require[d] remand," where "ALJ [did not] explain how he decided which of [the claimant]'s statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant]'s [RFC]")).)  Plaintiff deems the ALJ's above-described error "very harmful" (id. at 15), because "[t]he VE testified that were [Plaintiff] limited to 'occasional use of the right, dominant, upper extremity for handling and fingering' then she would be unable to perform her PRW as a payroll clerk and indeed, would be precluded from all jobs at the light and sedentary level" (id. (citing Tr. 71)).  Those arguments do not warrant reversal or remand.

RFC measures the most a claimant can do despite any physical and mental limitations.  Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain.  See

23

Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy).  See 20 C.F.R. § 404.1567.  Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).  However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion."  Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *1 (July 2, 1994) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio, 780 F.3d at 636–37. Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, although the ALJ did not include in his decision an express function-by-function discussion of Plaintiff's manipulative abilities (see Tr. 20-23), the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's cervical degenerative disc disease ("DDD") and diabetic neuropathy (A) qualified as severe (see Tr. 17) but (B) did not cause limitations greater than the lifting/carrying/pushing/pulling requirements of sedentary work with, inter alia, "frequent reaching in all directions except overhead, which is occasional" (Tr. 20).

First, the ALJ's evaluation of Plaintiff's subjective symptom reporting supports the ALJ's finding that Plaintiff's cervical DDD and neuropathy did not warrant handling and fingering limitations. In that regard, the ALJ expressly acknowledged Plaintiff's testimony that she had "difficulty . . . grasping things and reaching with her right hand" (Tr. 21; see also Tr. 47-50); however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.) In support of that finding, the ALJ provided the following analysis:

> There are also several reasons why [Plaintiff]'s allegations of debilitating symptoms are not entirely consistent with the medical evidence of record. First, despite allegations of debilitating limitations, physical and mental status examinations, as mentioned above, generally indicated benign findings. Second, [Plaintiff] described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In spite of her limitations, she remains capable of driving, shopping, preparing meals, performing household chores, and managing her money [(Tr. 294-301, 620)]. For these reasons, [Plaintiff]'s allegations concerning the severity of her symptoms are not entirely consistent with the medical evidence, and any limitations imposed by [Plaintiff]'s impairments are accounted for sufficiently in the [RFC].

(Tr. 23.) Plaintiff did not challenge any of these findings by the ALJ. (See Docket Entry 12.)

26

Second, the medical evidence upon which Plaintiff relies (see id. at 12-14 (citing Tr. 299, 512, 515, 518-22, 525, 526, 528, 529, 535, 547, 552, 553, 613, 710, 736, 744, 872, 954, 956)) would not have compelled the ALJ to include handling and fingering limitations in the RFC. As the Commissioner argues, (see Docket Entry 14 at 14), much of that evidence reflects subjective complaints of neck and shoulder pain (which supports the ALJ's reaching limitations), rather than objective evidence of hand pain, weakness, or numbness, see Tr. 512-15 (complaints of neck and shoulder pain with occasional right thumb numbness but normal right upper extremity range of motion and no findings of decreased sensation or strength on examination)), 521-29 (subjective report of tingling in fingers but normal sensation and no finding of weakness in hands, fingers, and thumbs), 535-38 (complaint of right-sided neck pain with normal range of motion and right trapezius muscle spasm and numbness but no hand findings), 547-53 (reports of neck and shoulder pain especially when raising her arm with tenderness in right trapezius and shoulder but no hand findings), 735-37 and 743-45 (reports to gastroenterologist of joint pain in fingers, as well as muscle weakness and numbness and tingling without specification of location with no corroborative objective findings on examination), 954-56 (complaints of pain in right side of neck and right shoulder with occasional tingling in right thumb without weakness but with normal objective strength,

27

sensation, and range of motion). The remaining evidence does not contain findings relating to Plaintiff's hands. (See Tr. 613 (MRI of cervical spine), 707-13 (routine follow-up for right <u>foot</u> injury reflecting finding of right-sided numbness and weakness without specification of location), 870-76 (routine follow-up with primary care physician with finding of right-sided numbness and weakness without specification of location).)

Here, the ALJ discussed the following objective medical evidence relating to Plaintiff's abilities to handle and finger:

- "physical examinations throughout the record generally showed benign findings including . . . normal musculoskeletal range of motion with normal strength, no swelling, and no erythema, normal sensation, and normal motor movements, <u>particularly in the right upper extremity</u>" (Tr. 21 (emphasis added));

- "[t]reatment included medication, including epidural steroid injections, and physical therapy, which alleviated some of [Plaintiff]'s symptoms" (<u>id.</u>); and

- "right-sided paracervical muscular tenderness, diffuse tenderness to palpation across the trapezius area, right side numbness and weakness, some left upper extremity weakness at 3+/5, were noted on some examinations, but these abnormal clinical presentations were offset by generally benign presentations noted elsewhere in the record and by evidence of effective treatment" (Tr. 21-22).

That analysis, along with the ALJ's evaluation of Plaintiff's subjective symptom reporting discussed above, provides substantial evidence to support the ALJ's finding that Plaintiff's cervical DDD

28

and neuropathy warranted reaching, but not handling and fingering, limitations (see Tr. 20).

Third, the opinion evidence would not have compelled the ALJ to adopt handling and fingering limitations. No medical provider of record provided any opinions restricting Plaintiff's handling and fingering capabilities. Moreover the state agency medical consultant at the reconsideration level found Plaintiff capable of performing the lifting/carrying/pushing/pulling of medium work with frequent overhead reaching and no limitations on handling or fingering. (See Tr. 103-04.)[9] The ALJ gave that opinion little weight because he deemed it "inconsistent with the medical evidence of record that show[ed Plaintiff wa]s more limited" (Tr. 22), reduced the exertional level of the RFC from medium to sedentary (see Tr. 20), added a restriction to frequent reaching in all directions but overhead (id.), and reduced the overhead reaching to occasional (id.). Thus, even after accounting for "medical evidence of record that that show[ed Plaintiff wa]s more limited" (Tr. 22), the ALJ did not find inclusion of handling and fingering limitations in the RFC warranted (see Tr. 20).

For the above-stated reasons, Plaintiff has failed to show that the ALJ improperly evaluated Plaintiff's abilities to handle and finger, and her second assignment of error thus falls short.

_____

[9] A single decision-maker ("SDM"), i.e., a non-medical source, provided the initial-level determination (see Tr. 85) and thus the ALJ neither considered nor weighed that determination (see Tr. 22).

29

### 3. Additional Breaks to Lie Down

Plaintiff's third and final issue on review maintains that "[t]he ALJ erred by failing to account for Plaintiff's need to lie down and take breaks in the RFC due to her gastroparesis, fatigue and nausea resulting from her [diabetes mellitus]." (Docket Entry 12 at 15 (bold font and single-spacing omitted).) More specifically, Plaintiff notes that, "[w]hile the ALJ included an accommodation for a five-minute break to use the restroom once an hour in the RFC to account for [Plaintiff's] diarrhea, the ALJ does not explain why he did not include additional breaks for [Plaintiff] to lie down when experiencing nausea, fatigue, clamminess and or weakness from her [diabetes mellitus] with blood glucose fluctuations and gastroparesis impairing her ability to digest food." (Id. at 15-16 (internal parenthetical citation omitted) (citing Tr. 20).) According to Plaintiff, both her testimony (id. at 15 (citing Tr. 39, 41-42, 45, 60, 63-65)) and the medical evidence (id. at 16-17 (citing Tr. 423-24, 433, 475-76, 520, 535, 541, 554, 560, 576, 619, 661, 676, 707, 735-36, 743, 870, 884, 930-31)) demonstrate "that she struggled with persistent abdominal pain, nausea and vomiting" (id. at 16).

The ALJ acknowledged Plaintiff's statement that she remained "unable to work due [in part] to . . . gastroparesis" (Tr. 21), but, as discussed above, the ALJ discounted those statements as inconsistent with the other record evidence (see id.), and

30

Plaintiff did not challenge that finding (see Docket Entry 12). Furthermore, Plaintiff cannot (and did not) point to any opinion evidence of record supporting the need for additional breaks to lie down in the RFC. (See id.)

Moreover, the evidence Plaintiff cites would not have compelled the ALJ to include additional breaks in the RFC to allow Plaintiff to lie down. Most of that evidence pre-dates her amended alleged onset date of December 28, 2015 (see Tr. 423-34 (August 2012), 433 (November 2012), 475-76 (February 2013), 554 (October 2015), 560 (July 2015), 576 (April 2015), 827 (January 2014), 930-31 (June 2012)), and the remainder reflects Plaintiff's subjective reports of abdominal pain, dysphagia, nausea, and vomiting (which the ALJ discounted, a finding unchallenged by Plaintiff) with normal objective abdominal findings (see Tr. 520, 535, 541, 619, 661, 676, 707, 735-36, 743, 870, 884).

Put simply, Plaintiff's third issue on review fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that

31

Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered dismissing this action.

                                    /s/ L. Patrick Auld
                                **L. Patrick Auld**
                        **United States Magistrate Judge**

May 3, 2021